IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JUAN K. SPURLIN, JR.,

    Defendant.

CRIMINAL ACTION FILE NO.

1:26-cr-42-SDG-JKL

## ORDER AND FINAL REPORT AND RECOMMENDATION

This case is before the Court on the following pretrial motions filed by Defendant Juan K. Spurlin, Jr., who is proceeding *pro se.* [Docs. 11, 12, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 32, 34, 35, 36, 38, 40, 41, 42, 43, 44, 45, 46, 50, and 51.[1]] The government has filed an omnibus response to the pending motions. [*See* Doc. 54.] After careful review of the motions and the government's omnibus response, the Court issues the following order and report and recommendation.

---

[1] Mr. Spurlin has also filed numerous *pro se* "notices" with the Court; however, those are not motions and therefore do not require resolution via order. [*See* Docs. 9, 10, 13, 14, 25, 48.] Indeed, because those documents do not request any specific, distinct action by the Court that has not otherwise been requested in other motions, no ruling is necessary or appropriate.

## I.      BACKGROUND

On May 12, 2025, Mr. Spurlin was issued four violation notices:  one charging a violation of 18 U.S.C. § 111; two charging violations of 41 C.F.R. § 102-74.385; and the last charging a violation of 41 C.F.R. § 102-74.390.  *See* Violation Notices 9615888, 9615889, 9615890, 9615891.  The violation notices stem from an alleged incident that occurred at the Richard B. Russell Federal Building, where Mr. Spurlin entered into a verbal altercation with a federal law enforcement officer (and court security officers) and allegedly headbutted the officer who detained him.

On December 16, 2025, Mr. Spurlin appeared before the undersigned for an initial appearance on the violation notices.  *United States v. Juan K. Spurlin, Jr.*, 1:25-mj-1314 ("*Spurlin I*"), Dkt. No. 2.  At the hearing, the Court observed that the citation charging a violation of 18 U.S.C. § 111 could not proceed by way of a violation notice because the charge stemmed from allegations that Mr. Spurlin physically assaulted a federal officer, a felony offense that carries a maximum term of imprisonment of eight years.  *See* 18 U.S.C. § 111(a); *id.* § 3559(a)(4); *see also* Fed. R. Crim. P. 7(a) (generally requiring felonies to be prosecuted by indictment); *cf.* 58(b)(1) (permitting the trial of a petty offense to proceed on a citation or violation notice).  The remaining citations, however, were all Class C

2

misdemeanors, making them petty offenses. *See* 18 U.S.C. § 19 (defining petty offense to include Class C misdemeanors); *id.* § 3559(a)(8) (defining Class C misdemeanor as an offense for which the maximum term of imprisonment is 30 days or less, but more than 5 days); 41 C.F.R. § 102-74.450 (imposing maximum term of imprisonment of 30 days for violations of 41 C.F.R. §§ 102-74.385 and 102-74.390); Fed. R. Crim. P. 58(b)(1). At the hearing, Mr. Spurlin invoked his right to represent himself, and after a *Faretta* hearing, the undersigned permitted him to proceed *pro se*. *Spurlin I*, Dkt. No. 2. He entered not guilty pleas to the three violation notices. *Id.*

Following his initial appearance, Mr. Spurlin filed pretrial motions seeking, among other things, dismissal of the charges, recusal of the undersigned, and suppression of evidence. *See Spurlin I*, Dkt. Nos. 6, 7. The Court ordered the government to respond to the motions no later than January 27, 2026, and set a trial date of February 3, 2026. *Id.*, Dkt. Nos. 8, 10. On January 27, 2026, the government moved for a three-day extension of time to respond to the motions, explaining that it intended to present the case to a grand jury later that week to seek an indictment charging Mr. Spurlin with assault of a federal officer, which would render the pending motions moot. *Id.*, Dkt. No. 15. The Court granted the motion, making the government's deadline January 30, 2026. *Id.*, Dkt. No. 16.

3

On January 28, 2026, a grand jury returned the indictment in this case, charging Mr. Spurlin with one count of assaulting a federal officer in violation of 18 U.S.C. § 111.  [*See* Doc. 1 (indictment).]  Having obtained the indictment, the government moved to dismiss the four violation notices without prejudice on January 30, 2026.  *Spurlin I*, Dkt. No. 17.  The Court granted the motion, dismissing the four notices without prejudice.  *Id.*, Dkt. No. 22.

After *Spurlin I* had been dismissed, Mr. Spurlin filed two additional motions in that case:  an "Omnibus Motion to Correct the Record; To Dismiss All Four Citations with Prejudice; and To Preserve Objections to Selective and Vindictive Prosecution," *Spurlin I*, Dkt. No. 30, and a "Motion to Seal and Preserve Record; To Confirm Final Dismissal of All Citations; and To Recognize Government Nonresponse as Acquiescence," *id.*, Dkt. No. 31.  The Court denied those motions, writing:

> Federal Rule of Criminal Procedure 48(a) authorizes the government to dismiss criminal charges with leave of court prior to trial.  Though leave of court is required, the government enjoys wide discretion in deciding whether to prosecute a case. *United States v. B.G.G.*, 53 F.4th 1353, 1361 (11th Cir. 2022).  "This core discretion also includes the decision whether to dismiss a prosecution." *Id.*  "The principal object of the leave of court requirement . . . is to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the government moves to dismiss an indictment over the defendant's objection." *Id.* (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)) (cleaned up, marks omitted).

The Eleventh Circuit has identified five principles to guide the Court's evaluation of whether leave to dismiss should be granted: (1) "the government is entitled to a presumption of good faith"; (2) "leave may be denied where the good-faith presumption has been overcome by a finding that the government sought the dismissal in bad faith"; (3) "the focus of the bad faith analysis must be on the government's reasons for dismissing the information"; (4) "if the defendant has overcome the presumption of good faith, the district court must still dismiss the information if the reason for dismissal does not go to the merits or demonstrate a purpose to harass"; and (5) "if the district court grants leave to dismiss the [charges], the Rule 48(a) dismissal is without prejudice because it does not bar a future prosecution on the same charges." *Id.* at 1361-63 (cleaned up, citations omitted).

Here, each of these considerations counsels in favor of dismissal without prejudice.  First, the government is entitled to a presumption of good faith because it gave a substantial reason for seeking dismissal—namely, that Mr. Spurlin had been indicted on a felony charge which the government could not prosecute via a violation notice.  Second, despite Mr. Spurling's feelings otherwise, there is no indication that the government sought the dismissal in bad faith.  Indeed, the government has streamlined the proceedings because Mr. Spurlin now faces just one charge (albeit the most serious one), rather than four.  Third, as just explained, the government has provided a good faith basis for dismissing the violation notices without prejudice.  Fourth, along these same lines, the reasons for the dismissal do not go to the merits of the case or demonstrate a purpose to harass; rather the dismissal is to comply with the Court's procedural rules.  Fifth and finally, the dismissal must be without prejudice. *See B.G.G.*, 53 F.4th at 1368 [] ("Once the district court decided to grant 'leave' to dismiss the information before trial, the dismissal under rule 48(a) had to be without prejudice and could not bar a future prosecution."); *see also id.* ("[R]ule 48(a) does not give the district court the discretion to rewrite the government's dismissal motion from one without prejudice to one with prejudice.  It is the government's dismissal—not the court's. And not the defendant's.").  Accordingly, Mr. Spurlin's

motions must be denied to the extent they seek dismissal of the violation notices with prejudice.

Mr. Spurlin's other scattershot requests also lack merit. He requests a "record correction" because only three of the citations were dismissed. [*See* [*Spurlin I*, Dkt. No.] 30 at 2.] But he is mistaken—the Court's order clearly shows that all four were dismissed without prejudice. [*See* [*Spurlin I*, Dkt. No.] 22 (dismissing all four citations without prejudice).] He relatedly contends that there is "ambiguity and prejudice" created by dismissal. [*See* [*Spurlin I*, Dkt. No.] 30 at 1.] But that simply is not the case because, again, the Court's order makes it clear that the dismissals are without prejudice. [[*Spurlin I*, Dkt. No.] 22.]

Mr. Spurlin also argues that the dismissal should be with prejudice because the government did not respond to his motions. [[*Spurlin I*, Dkt. No.] 31 at 1.] But the government did not miss any deadlines—it had until January 30, 2026 to respond to the motions, and it moved for and was granted dismissal on that same date.

Finally, Mr. Spurlin asks that the record be preserved and sealed to protect its "integrity." [[*Spurlin I*, Dkt. No.] 31 at 2.] It is unclear what records he is referring to, but, at any rate, the materials filed in this case are available—and will remain available—on PACER; and as a result, there is no reason to enter a further order of preservation. Likewise, Mr. Spurlin has provided no rationale to seal the case, and the Court finds no independent basis to do so.

*Id.*, Dkt. No. 35 at 4-7 (footnote omitted).

Meanwhile, on January 29, 2026, following the return of the indictment in this case, a summons was issued as to Mr. Spurlin, setting his arraignment for February 6, 2026, before Magistrate Judge Justin S. Anand, the duty judge that day. [Doc. 4.] Mr. Spurlin complied with the summons and appeared before Judge Anand for his arraignment. [Doc. 5.] At the hearing, Mr. Spurlin asked to

represent himself; however, he also refused to waive his right to counsel.  As a result, Judge Anand did not allow him to proceed *pro se* and, instead, appointed Caitlin Wade with the Federal Defender Program, Inc.[2]  [Docs. 6, 7.]  Despite being represented, Mr. Spurlin has since filed roughly 35 *pro se* motions and notices[3] during 14-day period between his arraignment and February 20, 2026, the deadline for filing pretrial motions.  On February 20, 2026, Ms. Wade moved to withdraw as counsel.  [Doc. 47.]

The undersigned held the pretrial conference on February 23, 2026.  [Doc. 49.]  This time, Mr. Spurlin unequivocally invoked his right to represent himself. The Court then conducted a *Faretta* hearing and allowed Mr. Spurlin to represent himself in this action.  [*Id.*]  Ms. Wade was also appointed as stand-by counsel. [*Id.*]  At the conference, Mr. Spurlin also confirmed that he wished to persist on the motions he had filed; thus, the Court directed the government to file an omnibus response.  [*Id.*]  The government did so on March 16, 2026.  [Doc. 54.] The motions are now ripe for resolution.

---

[2] Ms. Wade had been appointed standby counsel in *Spurlin I.  See Spurlin I*, Dkt. No. 4.

[3] *See* Docs. 11, 12, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 32, 34, 35, 36, 38, 40, 41, 42, 43, 44, 45, 46, 50, and 51 (motions); *see also* Docs. 9, 10, 13, 14, 25, 48 (notices).

## II.   DISCUSSION

In the discussion that follows, the Court groups Mr. Spurlin's motions by subject matter.[4]

---

[4] The undersigned pauses to address the Court's jurisdiction to dispose of these motions.  On February 9, 2026, just one business day after his arraignment, Mr. Spurlin filed what the clerk construed to be a notice of appeal in this case. [Doc. 31.]  However, it appears that Mr. Spurlin's February 9 filing was made in relation to an actual notice of appeal filed in *Spurlin I* on February 6, 2026.  *See Spurlin I*, Dkt. No. 32 (Feb. 6, 2026 notice of appeal).  [*See also* Doc. 31 (requesting Feb. 6, 2026 notice of appeal be transmitted).]  Since that notice of appeal has already been transmitted to the Circuit, *see Spurlin I*, Dkt. Nos. 34 and 36, his February 9, 2026 filing is **DEEMED MOOT**.  [Doc. 31.]

But even if Mr. Spurlin had sought an appeal in the present case, the Court would retain jurisdiction.  Admittedly, filing a notice of appeal generally confers jurisdiction on the court of appeals and divests the district court of jurisdiction. *See United States v. Diveroli*, 729 F.3d 1339, 1341 (11th Cir. 2013).  But the filing of an appeal from a nonappealable order (or, as is the case here, no order at all) does not deprive the district court of jurisdiction.  *See United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979) (en banc) (holding that prematurely filed notice of appeal did not deprive district court of jurisdiction), *superseded by statute on other grounds as recognized in United States v. Martinez*, 763 F.2d 1297, 1308 n.11 (11th Cir. 1985).  "Otherwise a defendant could delay a criminal proceeding and even disrupt an ongoing trial simply by filing a piece of paper denominated a notice of appeal."  *United States v. Fattah*, 83 F. Supp. 3d 632, 634 (E.D. Pa. 2015).  Here, Mr. Spurlin's notice of appeal, filed immediately after his arraignment and before there were any appealable orders entered, is patently frivolous—if not obstructive.  Thus, the district court retains jurisdiction.

8

### A.    Motions that Have Been Addressed

Several of Mr. Spurlin's motions have already been addressed by the Court, either at the pretrial conference or in connection with *Spurlin I*. The Court takes up those motions first.

Mr. Spurlin moves to dismiss the four violation notices with prejudice. [Doc. 20.] That motion is substantively identical to the motion he filed in *Spurlin I*. Therefore, the motion is **DENIED** for the reasons already explained in the Court's order in *Spurlin I* (the pertinent parts of which have been reproduced in the Background section, above). *See Spurlin I*, Dkt. No. 35 at 4-7.

Mr. Spurlin also moves to compel the government to respond to motions he filed in *Spurlin I*. [Doc. 22.] But again, as already explained to Mr. Spurlin, that case has been closed and there are no pending motions; thus, the government need not respond to any motions in that case.    Thus, the motion to compel responses [Doc. 22] is **DENIED**.

In several motions, Mr. Spurlin variously moves to represent himself in this action. [*See* Docs. 15, 40, 41, 46, 50, 51.] Those requests are **DENIED AS MOOT**.    As noted, the Court granted Ms. Wade's motion to withdraw and, following a *Faretta* hearing, allowed Mr. Spurlin to represent himself. [Doc. 49.]

### B.      Motions to Dismiss for Vindictive Prosecution

Mr. Spurlin moves to dismiss the indictment for vindictive prosecution because the government sought the indictment only after he filed pretrial motions in *Spurlin I.* [*See* Docs. 11 at 2, 15 at 2, 24, 28 at 2, 30 at 2, 32 at 2, 35 at 3, 38 at 1-2, 41 at 3, 42, 44, 45 at 2.] These motions should be denied.

As a general rule, "[a]s long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006). But when a prosecutor makes a charging decision to improperly punish a defendant for simply exercising a protected statutory or constitutional right, the defendant's right to due process is violated. *United States v. Kendrick*, 682 F.3d 974, 981 (11th Cir. 2012) (citations omitted). "There are two ways to prove a prosecutorial vindictiveness claim: (1) by showing that a presumption of vindictiveness arises from the government's conduct; or (2) by showing actual vindictiveness." *United States v. Marks*, No. 11-80072-CR, 2013 WL 4516760, at *1 (S.D. Fla. Aug. 14, 2013), *report and recommendation adopted*, 2013 WL 4502309 (S.D. Fla. Aug. 23, 2013); *see also United States v. Brown*, 862 F. Supp. 2d 1276, 1289 (N.D. Ala. 2012), *aff'd*, 516 F. App'x 872 (11th Cir. 2013).

In the pretrial setting, there is no presumption of vindictiveness just because the government pursues more serious charges after a defendant has exercised a legal right. *Barner*, 441 F.3d at 1316 ("While a prosecutor's decision to seek heightened charges after a successful *post-trial* appeal is enough to invoke a presumption of vindictiveness, 'proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the *pretrial* context.'") (quoting *United States v. Miller*, 948 F.2d 631, 633 (10th Cir. 1991)); *see also United States v. Goodwin*, 457 U.S. 368 (1982) (holding that automatic presumption of vindictiveness did not apply to pretrial increase in charges).[5]

Here, there is nothing presumptively vindictive about the government's decision to charge Mr. Spurlin with a felony offense. Indeed, the relevant facts suggest the opposite, as it appears that a felony charge was a likely outcome from the moment the incident occurred, since the officer who issued the violation notices on May 12, 2025 in fact attempted to charge him with violating 18 U.S.C.

---

[5] In *Barner*, the Eleventh Circuit did not absolutely foreclose the possibility that in the pre-trial context, a presumption of vindictiveness could arise, *see Barner*, 441 F.3d at 1316-17; however, Mr. Spurlin cites no case suggesting that the filing of his motions in *Spurlin I* would give rise to such a presumption.

§ 111(a)(1).  And because there is no presumption of vindictiveness, Mr. Spurlin must demonstrate actual vindictiveness.

But Mr. Spurlin has not made a showing of actual vindictiveness either. "To establish actual vindictiveness, a defendant must prove that:  (1) the prosecutor wanted to punish the defendant for exercising his rights (animus); and (2) the prosecutor's animus caused the prosecutor to bring charges of increased severity (causation)."  *Brown*, 862 F. Supp. at 1290.  "A showing of actual vindictiveness is exceedingly difficult to make and is a burden borne by the defendant."  *United States v. Barr*, No. 4:17-CR-0038-HLM-WEJ, 2019 WL 3006624, at *4 (N.D. Ga. Apr. 23, 2019) (quotation marks omitted), *report and recommendation adopted*, 2019 WL 2067940 (N.D. Ga. May 9, 2019).

In this case, when Mr. Spurlin first appeared before the Court on the violation notices, the Court observed that one of the notices purported to charge a felony for physically assaulting a federal officer under 18 U.S.C. § 111(a), which can only be charged by way of an indictment (or information) under Federal Rule of Criminal Procedure 7.  [*See Spurlin I*, Dkt. No. 35 at 2.]  The government then presented the case to a grand jury and obtained an indictment charging Mr. Spurlin with that single felony offense soon after.  [*See* Doc. 1.]  Mr. Spurlin has not alleged, much less presented any facts, that make it plausible that the

government bore an actual desire to punish him for his pretrial motions during the intervening period, or that any such animus caused the government to bring the charges—again, that it already sought to pursue via a violation notice—in this case.

Accordingly, it is **RECOMMENDED** that Mr. Spurlin's motions seeking dismissal for vindictive prosecution be **DENIED**.  [Docs. 11, 15, 24, 28, 30, 32, 35, 38, 41, 42, 44, 45.]

### C.      Motions to Dismiss Based on Alleged Court Involvement in the Charging Decision

Mr. Spurlin variously moves to dismiss this case based on accusations that the Court improperly participated in the decision to charge him with a felony, which he contends violated his due process rights.  [Docs. 29 at 2, 42 at 2-4, 44 at 2, 45 at 3, 51 at 6-7.]  He also argues, in passing, that there are "impartiality concerns" because the undersigned also presided over an earlier criminal proceeding involving Mr. Spurlin.  [Doc. 11 at 2.]  These arguments provide no basis for dismissal.  First, the Court's observation, at the initial appearance on the violation notices, that the government could charge a felony only via indictment was not, as Mr. Spurlin contends, participation in the charging decision.  Nor is there anything improper about a judge hearing successive criminal cases involving the same defendant.  Accordingly, it is **RECOMMENDED** that

Spurlin's motions to dismiss for improper judicial intervention be **DENIED**. [Docs. 11, 29, 42, 44, 45, 51.[6]]

### D.    Motions to Dismiss Due to Lack of Notice of the Indictment and Arraignment

Mr. Spurlin also moves to dismiss this case because he says he did not receive timely service of the indictment or arraignment, and only learned of them because he was monitoring the Court's electronic filing system.  [Doc. 11 at 1, 15 at 1-2, 23, 28, 29 at 1, 30, 35 at 2-3, 38 at 1, 40 at 1-2, 41, 43, 45, 50 at 3, 51 at 5-6.] He contends that this was "constitutionally inadequate," created "a risk of false Failure to Appear," and constituted "ambush and bad faith."  [Doc. 11 at 1.]  He also generally asserts that the lack of notice "exposed [him] to potential unlawful detention, failure-to-appear allegations, and impaired defense preparation." [Doc. 15 at 2.]

Mr. Spurlin cites no authority that suggests a criminal defendant is entitled to a certain amount of advanced notice (or even any notice at all) after an

---

[6] Mr. Spurlin has filed a "Notice of Institutional Defects, Request for Accountability Records, and Statement of Good Faith" [Doc. 27] in which he asks the undersigned to provide "public accountability records" including "Judicial oath of office"; "Judicial bond information"; "Any applicable fidelity or performance bonds"; "Applicable ethics compliance records"; and "Any other records reflecting official authority and accountability" [*id.* at 1].  This request is facially frivolous, and thus, it is **DENIED**.

indictment is returned or, indeed, prior to his arraignment. As the government correctly points out, in many cases, the first time a criminal defendant learns of charges against him is when agents arrest the defendant. Nor has he shown prejudice. By his own admission, he learned of the arraignment with enough time to appear as directed, and he was neither detained nor charged with failing to appear. [Doc. 41 at 2.] To the contrary, as the pretrial filings in this case amply demonstrate, the purported lack of notice in no way hindered in his ability to mount a defense. Accordingly, it is **RECOMMENDED** that Mr. Spurlin's motions to dismiss based on purported inadequate notice of the arraignment and the indictment be **DENIED**.[7] [Docs. 11, 15, 23, 28, 29, 30, 35, 38, 40, 41, 43, 45, 50, 51.]

---

[7] Though not captioned as a motion, Mr. Spurlin has filed what he calls "Defendant's Plea in Bar – Proceeding Coram Non Judice (Lack of Jurisdiction, Defective Notice, and Structural Impartiality Violations)," in which he asserts that the case should be dismissed because a judge other than the undersigned handled his arraignment despite the case not being reassigned. [Doc. 29 at 1.] As he sees it, "[t]his contradiction undermines judicial authority and impartiality." [*Id.*] This is frivolous. It appears he is complaining about appearing before Judge Anand, the duty judge, for his arraignment. Obviously, there is nothing improper with a duty magistrate judge handling the initial appearance and arraignment in a case that has been assigned to a different judge. But even more to the point, when Mr. Spurlin appeared before Judge Anand, this case had not yet been assigned to any judge. Thus, Mr. Spurlin's assertion that there was a "reassignment" is simply wrong. [*See* Doc. 6.]

### E.      Motion to Clarify the Charging Document

Mr. Spurlin moves for "clarification of the operative charging instrument and confirmation of adequate time to respond." [Doc. 40-1 at 3.] It appears that this motion also stems from Mr. Spurlin's assertion that he did not receive adequate notice of the indictment prior to his arraignment. No clarification is warranted. The record shows that Mr. Spurlin received a copy of the indictment—the operative charging document in this case—at his arraignment and that the indictment was read it to him in open court. [*See* Doc. 6.] Accordingly this motion is **DENIED**. [Doc. 40-1]

### F.      Motions Related to Discovery and *Brady/Giglio*

Mr. Spurlin has filed several discovery-related motions to compel the government to produce discovery material under Rule 16 or *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). [Docs. 12, 16, 35 at 3, 36 at 2, 41 at 3-5, 46 at 4-5.] These motions are due to be denied. The government represents that it had produced all Rule 16 discovery, that it does not possess any *Brady* or *Giglio* material, that if any such material comes into its position it will promptly produce it, and that it will produce Jencks Act materials at the appropriate time. [Doc. 54 at 6.] Thus, it appears that the government has complied with its discovery obligations and is not withholding any discoverable

16

materials from production.  Nor is there a need for the Court to enter an order directing the government to follow Rule 16 and disclose *Brady/Giglio* materials because the Court has already directed the government to do so.  [*See* Doc. 6 at 2 (Due Process Protection Act Order), *see also* Doc. 8 (scheduling order)].  The government is well-aware of its obligations; no further court order is needed.  Thus, Mr. Spurlin's motions to compel [Docs. 12, 16, 35, 36, 41, 46] are **DENIED**.

Somewhat relatedly, Mr. Spurlin variously moves for an order directing the government to preserve evidence that is relevant to his defense.  [*See, e.g.,* Doc. 46 at 6; *see also* Docs. 12, 16, 17, 21, 28, 34, 51.]  This includes body-camera archives, surveillance systems, access control logs, radio and dispatch recordings, digital photographs, and any electronically stored information related to the incident.  [*Id.*]  Again, the government represents that it has already turned over Rule 16 evidence, and there is otherwise no indication that the government has withheld evidence which might be in danger of spoliation.  This, his motions seeking preservation of evidence are **DENIED**.  [Docs. 12, 16, 17, 21, 28, 34, 46, 51.]

### G.    Motions to Seal

Next, Mr. Spurlin moves for an order "sealing and preserving the complete record in this matter."  [Doc. 21 at 1.]  He posits that there is "a substantial risk of

alteration, loss, or fragmentation of the record." [*Id.*] He further contends that "[s]ealing is appropriate to protect sensitive personal information, prevent misuse of prejudicial materials, and ensure that the record reflects and accurate and unaltered procedural history." [*Id.*]

"The press and public enjoy a qualified First Amendment right of access to criminal trial proceedings." *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1028 (11th Cir. 2005). "In addition, 'the courts of this country recognize a general right to inspect and copy public records and documents, including judicial documents and records.'" *United States v. Sajous*, 749 F. App'x 943, 944 (11th Cir. 2018) (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978)). "A party may overcome that presumption if it can show 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Ochoa-Vasquez*, 428 F.3d at 1030 (quoting *Press-Enter. Co. v. Superior Ct. of Calif., Riverside Cnty.*, 464 U.S. 501, 510 (1984)). In deciding whether to shield information from the public, courts "consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public

18

concerns, and the availability of a less onerous alternative to sealing the documents." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

With those considerations in mind, the Court sees no basis to order any portion of this case be sealed. Contrary to Mr. Spurlin's assertion, there is no "sensitive personal information" or "prejudicial materials" appearing on the public docket. Nor is there any real danger that documents filed in this case will be deleted or altered. Again, the materials filed in this case are available—and will remain available—on PACER; thus, there is no reason to enter a further order to preserve those materials. Accordingly, Mr. Spurlin's "Motion to Seal and Preserve the Record" [Doc. 21] is **DENIED**.

### H.    Motions for a Confidentiality Protective Order

Mr. Spurlin moves for a protective order that (1) limits the use of discovery materials to defending this case and (2) restricts such materials from being disseminated beyond the parties, the Court, and standby counsel. [Docs. 17, 34.] The Court has broad discretion to restrict discovery inspection or otherwise regulate discovery for good cause. *See* Fed. R. Crim. P. 16(d)(1); *see also United States v. Campa*, 529 F.3d 980, 995 (11th Cir. 2008) (explaining that the district court's authority to regulate discovery is broad). The Court agrees with the government that a protective order is not necessary here. [*See* Doc. 54 at 9-10.]

19

Mr. Spurlin has not shown that there are any discovery materials that are at risk of misuse by third parties or that would otherwise justify a protective order here. Accordingly, the motions for a protective order are **DENIED**.  [Docs. 17, 34.]

### I.      Motions to Exclude Evidence of Prior Bad Acts

Mr. Spurlin moves to exclude evidence of his prior bad acts, presumably under Federal Rules of Evidence 403 and 404(b).  [Docs. 18, 19.]  The government responds that although it has produced Mr. Spurlin's criminal history (as it is required under Rule 16), the government does not intend to affirmatively use any of that information at trial.  [Doc. 54 at 8.]  Because the government states that it does not intend to use evidence of prior bad acts at trial, the motions to exclude are **DENIED WITHOUT PREJUDICE**.  [Docs. 18, 19.]

### J.      Demands for Jury Trial

Within numerous motions, Mr. Spurlin variously demands a jury trial. [Docs. 23 at 1, 28 at 2, 35 at 3, 46 at 1-2 and 15, 50 at 2, 4, 6.]  Federal Rule of Criminal Procedure 23(a), however, provides that if a defendant is entitled to a jury trial, the trial *must* be by jury unless the defendant waives his right to a jury trial in writing, the government contents, and the court approves.  Fed. R. Crim. P. 23(a)(1)-(3).   Mr. Spurlin does not direct the Court to any authority that suggests a defendant must file a motion to preserve the right to a jury trial.

Indeed, as just stated, Rule 23 makes it automatic.  Thus, to the extent that his demands for a jury trial could be construed as motions, they are **DENIED AS MOOT**.  [Docs. 23, 28, 35, 46, 50.]

### K.    Motion to Recognize and Consolidate Other Criminal Cases

Mr. Spurlin moves the Court to "recognize and consolidate" this case with other criminal proceedings, including *Spurlin I* and "earlier federal and state actions involving the same alleged incident of May 12, 2015," which he says is "for purposes of jurisdictional and constitutional review."  [Doc. 24 at 1.]  Mr. Spurlin provides no authority, and the Court is not aware of any, that supports this request, and the only other case the Court is aware of involving that conduct—*Spurlin I*—has been dismissed.  Thus, the motion is **DENIED**.  [Doc. 24.]

### L.    Miscellaneous Motions

Mr. Spurlin has made other miscellaneous requests.  First, he has filed a one-page "Motion to Write Truth into the Record."  [Doc. 26.]  He contends that he filed the motion "to correct distortions created by silence, delay, and procedural relabeling," and generally complains that his motions in *Spurlin I* were denied as moot, that he did not receive adequate notice, and that the charges

have been retaliatory escalated.  [*Id.* at 1.]  Airing grievances is not a motion.  But to the extent that a ruling is required, the motion is **DENIED**.  [Doc. 26.]

Next, Mr. Spurlin moves for the Court to "recognize Defendant's intent to seek Rule 17(b) subpoenas and [p]ermit Defendant to submit specific subpoena requests as discovery clarifies witness identities."  [Doc. 46 at 6.]  This request is unnecessary.  Whatever rights Defendant has to request subpoenas under Rule 17, he retains them—he simply must make a request that complies with the rule. There is no need for the Court to "recognize" his intention to do so.  Accordingly, Mr. Spurlin's motion regarding Rule 17(b) subpoenas is **DENIED**.  [Doc. 46.]

Mr. Spurlin variously requests continuances.  [Docs. 11, 35, 40, 50, 51.]  He does not specify, however, what deadlines he seeks to continue or for how long. Without any cognizable relief requested, the requests for continuances are **DENIED**.  [Docs. 11, 35, 40, 50, 51.]

Mr. Spurlin makes a passing demand for "equitable and monetary relief of $15,000" and "leave to submit an itemized accounting" because he as "suffered financial loss and harm."  [Doc. 32 at 2.]  Again, Mr. Spurlin provides no legal authority for such a request, and the Court is aware of none. Thus, this demand— assuming that it is even a motion—is **DENIED**.  [Doc. 32.]

Finally, Mr. Spurlin moves for "adjudication of unresolved motions, proof of service, enforcement of Brady obligations, prohibition of retaliation, evidentiary hearings, written findings, enforcement of jury trial rights, stay of proceedings pending compliance, and other just relief." [Doc. 35 at 4.] This unparticularized request is due to be **DENIED**. [Doc. 35.] This request just reiterates his other more particularized requests, which the Court, construing Mr. Spurlin's filings liberally, has addressed above.

## III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** the following motions, in which Mr. Spurlin seeks dismissal of the indictment, be **DENIED**: Docs. 11, 15, 23, 24, 28, 29, 30, 32, 35, 38, 40, 41, 42, 43, 44, 45, 50, 51.[8]

It is **ORDERED** that the remaining motions, which are nondispositive or partially seek nondispositive relief, be **DENIED**: Docs. 12, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 32, 34, 35, 36, 40, 41, 46, 50, 51.

I have now addressed all pretrial matters referred to me and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

---

[8] Because a motion to dismiss is dispositive, the undersigned must resolve such a motion via report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A).

IT IS SO ORDERED AND RECOMMENDED this 23rd day of March, 2026.

_____

JOHN K. LARKINS III
United States Magistrate Judge